UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LOIS M. SOMERVILLE,**

    **Plaintiff,**

v.                                                       Case No. 6:24-cv-2185-JSS-NWH

**U.S. DEP'T OF HEALTH AND
HUMAN SERVS., U.S. ATTORNEY
FOR THE MIDDLE DISTRICT OF
FLORIDA, ATTORNEY GENERAL
OF THE UNITED STATES, AETNA
LIFE INS. CO., CVS CAREMARK,
APRIL DAVIS, ROBERTO M.
GUTIERREZ, GERALD FOULDS,
and UNKNOWN OTHERS,**

    **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on the Motions to Dismiss filed by Defendants United States Department of Health and Human Services, the United States Attorney for the Middle District of Florida, the Attorney General of the United States, Roberto M. Guiterrez, and Gerald Foulds (collectively, the "Federal Defendants"), (Doc. 88), and by Defendants Aetna Life Insurance Company, CVS Caremark, and April Davis (collectively, the "Aetna Defendants"), (Doc. 93), as well as Plaintiff's Motion to Amend her pleadings, (Doc. 112). For the reasons stated below, the undersigned will respectfully recommend that the Court grant the Motions to Dismiss and deny the Motion to Amend.

## BACKGROUND

Plaintiff initiated this action on December 2, 2024, asserting that Defendants conspired to deprive her of $165.03 as part of a nationwide scheme between the federal government and pharmaceutical corporations to divert funds from legal residents to illegal aliens. (*See* Doc. 1). The Court dismissed the Complaint as a shotgun pleading. (*See* Doc. 73).

Plaintiff filed the Amended Complaint on May 12, 2025, which seeks review of administrative decisions resulting in the denial of Medicare coverage for certain medications. (*See* Doc. 75). Specifically, Plaintiff alleges that she was denied coverage under her Medicare Part D healthcare plan, provided through Aetna, for Lansoprazole and Phospha250Neutral. (*Id.* at 1–2). After Plaintiff appealed the Lansoprazole denial and received a favorable ruling from an administrative judge, Plaintiff's balances remained partially unpaid. (*Id.*). A second appeal due to these unpaid balances ended with a different administrative judge ruling *against* Plaintiff. (*Id.*). As for the Phospha250Neutral, Plaintiff alleges that an Aetna representative stated that the plan would cover the medication, but Plaintiff's appeals for coverage were rejected by Medicare. (*Id.* at 2). From there, the Amended Complaint alleges a series of conspiracies, schemes, and frauds between the Defendants to misappropriate Medicare funds. (*See id.*). Plaintiff attaches to the Amended Complaint several exhibits, including the documents from her administrative appeals.

The Federal Defendants and the Aetna Defendants then filed the instant Motions to Dismiss. (*See* Docs. 88, 93). Plaintiff responded and filed multiple notices and exhibits. (*See* Docs. 95, 96, 97, 98, 99, 100, 101, 109, 118). These voluminous materials include Plaintiff's narratives, correspondence with Defendants, financial records, affidavits, medical records, and more. Plaintiff also filed a Motion to file a Second Amended Complaint, (Doc. 112), to substitute an entity known as "GoHealth, LLC" for the Defendant previously named "Unknown Others." Because this proposed Second Amended Complaint is substantively no different to the operative Amended Complaint, (Doc. 75), the Motion to Amend does not affect the result here.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient; a complaint must "state a claim to relief that is plausible on its face." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

The Court need not accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* While pleadings from *pro se* litigants are held to a less stringent standard than pleadings drafted by attorneys, *Tannenbaum v. United States*,

148 F.3d 1262, 1263 (11th Cir. 1998), they still must meet minimal pleading standards, *Pugh v. Farmers Home Admin.*, 846 F. Supp. 60, 61 (M.D. Fla. 1994). The Court is "under no obligation to rewrite a pleading for a *pro se* party." *Arevalo-Mignone v. Bank of Am. N.A.*, No. 616CV433ORL18GJK, 2016 WL 8997480, at *1 (M.D. Fla. Apr. 20, 2016).

In general, when considering a motion to dismiss, a court must look only to the face of the pleadings, any documents attached thereto, and any documents mentioned by the pleadings that are "central" to the pending claims. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). Specifically, a court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents," the court "may consider such a document provided it meets the centrality requirement . . . ." *Id.*; *see Dodd v. Woods*, No. 809CV1872T27AEP, 2010 WL 3747007, at *2 (M.D. Fla. Aug. 31, 2010) (considering exhibits attached by *pro se* plaintiff in response to a motion to dismiss "when appropriate"), *report and recommendation adopted*, No. 8:09-CV-1872-T-27AEP, 2010 WL 3745802 (M.D. Fla. Sept. 21, 2010).

## DISCUSSION

The Amended Complaint refers to various constitutional injuries, discusses at length the administrative history of Plaintiff's claims, and appears to request wide-ranging and extraordinary remedies, *e.g.* a referral for an investigation of Medicare by the Executive Branch for fraud, price gouging, and the like. (Doc. 75 at 4). At its core, however, the Amended Complaint seeks review by this Court of Medicare Part D's adverse coverage determinations as they relate to two medications: lansoprazole and phospha 250 neutral. *See Masey v. Humana, Inc.*, No. 8:06-CV-1713-T-24EAJ, 2007 WL 2788612, at *3 (M.D. Fla. Sept. 24, 2007) (a plaintiff may not seek to circumvent the administrative process through "artificial distinction[s]" or "creatively styling" their claims); *Heckler v. Ringer*, 466 U.S. 602, 627 (1984) (considering the "essence" of claims that are "inextricably intertwined" with a claim for review of an administrative decision).

Medicare is governed by a notoriously complex web of statutes and regulations. Put as simply as possible, an enrollee in Medicare Part D, which covers prescription medications, may appeal an adverse coverage determination by making a request for redetermination, 42 C.F.R. § 423.580, then a request for reconsideration, 42 C.F.R. § 423.600, and *then* a request for a hearing before an Administrative Law Judge ("ALJ"), 42 C.F.R. §§ 423.2002(a), 423.2006. (Doc. 88 at 3–4). Finally, the enrollee may seek review by the Medicare Appeals Council. 42 C.F.R. § 423.2100(a). Only after exhausting all of these avenues for relief may the enrollee file suit in federal court

against the Secretary of Health and Human Services to review the coverage determination. 42 C.F.R. § 423.2136(d)(1).

Tautological as it may sound, Medicare Part D only covers the cost of prescription drugs that are considered "covered Part D drugs." *Dobson v. Sec'y of Health & Human Services*, No. 20-11996, 2022 WL 424813, at *1 (11th Cir. Feb. 11, 2022). Drugs are only covered under Part D when used for a "medically accepted indication," *i.e.* a purpose approved by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, or a purpose "supported by" various medical compendia of drugs and their accepted on-label and off-label uses. *United States v. King-Vassel*, 728 F.3d 707, 715 (7th Cir. 2013) (summarizing coverage of prescription drugs under Medicare Part D). Importantly, enrollees in Medicare Part D cannot seek judicial review of a final agency decision regarding drug coverage unless the amount in controversy meets or exceeds an amount determined by the Department of Health and Human Services ("DHHS") under its statutory authority. 42 U.S.C. § 1395w-104(h)(1); 42 U.S.C. § 1395w-22(g)(5) (originally requiring $1,000 in controversy, but adjusted over time by DHHS). In 2024, that minimum amount was $1,840. 88 Fed. Reg. 67297 (Sept. 29, 2023); (Doc. 93 at 18).

The undersigned will address both prescription drugs in turn.

## I.   Lansoprazole

Plaintiff requests review of an administrative decision finding that (1) lansoprazole was a covered Part D drug but that (2) Plaintiff was responsible for a $90 in-network/$100 out-of-network copay for the drug. (Doc. 75 at 8; Doc. 88 at 9; Doc.

93 at 10).[1] Plaintiff's allegations regarding the lansoprazole decision are cursory, but it seems that Plaintiff appealed this decision due to the copay amount and lost the appeal. (Doc. 75 at 8).

Although Plaintiff does not attach the ALJ's decision regarding lansoprazole to the Amended Complaint—the referenced exhibits actually contain materials regarding the other medication, phospha 250 neutral—the Federal Defendants attached the decision to their Motion to Dismiss. (Doc. 88-1). The undersigned will consider this exhibit without converting the Motion to Dismiss into a motion for summary judgment, as the Amended Complaint frequently references the ALJ's decision and the decision is central to Plaintiff's claims. *See Day*, 400 F.3d at 1276. The decision at issue, dated June 25, 2024, found that review of the copay determination was not available, as the minimum amount in controversy for an ALJ hearing was $180—above the amount sought by Plaintiff, $165.03.[2] (Doc. 88-1 at 4). The Medicare Appeals Council affirmed this decision on October 4, 2024. (*Id.* at 8–9).

In other words, Plaintiff is dissatisfied with the copay amount for lansoprazole, which all parties agree is a covered Part D drug. Medicare routinely requires enrollees to share costs by making copayments on prescribed drugs. 42 C.F.R. § 128(b)(2); *see Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 99 (1st Cir. 2025) (discussing copayments and

---

[1] The Amended Complaint asserts an amount in controversy of $165.03. (Doc. 75 at 8). Plaintiff derives this amount from several ~$60 copays for lansoprazole refills. (Doc. 76-12).

[2] The Medicare Appeals Council found that the true amount in controversy was $29.26. (Doc. 88-1 at 8). Neither amount is sufficient, however, so this dispute as to the proper amount in controversy does not affect the result here.

the relationship between pharmacies and Medicare Part D); *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 84 (2020) ("When a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM [pharmacy benefit manager] to determine that person's coverage and copayment information. After the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment. The prescription-drug plan, in turn, reimburses the PBM.").

Whether or not Plaintiff was entitled to a lower copayment for lansoprazole, this Court may only review the DHHS's decisions as to Medicare Part D coverage if the amount in controversy meets or exceeds $1,840. 88 Fed. Reg. 67297 (Sept. 29, 2023); (Doc. 93 at 18). This requirement is jurisdictional. *Acquisto v. Secure Horizons ex rel. United Healthcare Ins. Co.*, 504 Fed. App'x 855, 856 (11th Cir. 2013). Congress may establish such jurisdictional minimums without offending constitutional liberties or due process. *See Heckler*, 466 U.S. at 627 ("In the best of all worlds, immediate judicial access for all of these parties might be desirable. But Congress, in § 405(g) and § 405(h), struck a different balance . . . ."). Here, the threshold is not met, and this Court lacks subject matter jurisdiction to hear this dispute.

## II.   Phospha 250 Neutral

Next, Plaintiff contests a denial of coverage of a drug known as phospha 250 neutral. Plaintiff alleges that she submitted claims for the drug, which Aetna, the administering insurer for her Medicare Part D plan, denied. (Doc. 75 at 9). Following Plaintiff's appeals, the Medicare Appeals Council affirmed the ALJ's finding that

phospha 250 neutral was not a covered Part D drug. (Doc. 76-2 at 4). The Appeals Council found that (1) phospha 250 neutral was not included in the prescription formulary, (2) phospha 250 neutral was a "medical food" and not a drug, and (3) phospha 250 neutral has not been approved or regulated as a drug by the Food and Drug Administration. (*Id.* at 7). Furthermore, the Appeals Council noted that Plaintiff purchased the phospha 250 neutral from an out-of-network supplier, not a pharmacy, and that any contentions of misleading statements about drug coverage by the healthcare plan should be resolved through the plan's grievance procedures—not through the Medicare appeals process. (*Id.* at 8).

Plaintiff asserts that (1) the drug was, in fact, a covered prescription medication, and that (2) the ALJ should have consulted with the Executive Branch prior to issuing his decision, as it constituted an administrative rule change and therefore fell under the scope of a recent Executive Order requiring such consultation. (Doc. 75 at 10). This Court has already addressed the inapplicability of the Executive Order in question. (*See* Doc. 103). And whether or not the phospha 250 neutral was actually a covered Part D drug, Congress has limited the jurisdiction of federal courts over Medicare claims by requiring a minimum amount in controversy—here, a minimum of $1,840, as discussed *supra*. 88 Fed. Reg. 67297; 42 U.S.C. § 1395w-22(g)(5). Even taking the phospha 250 neutral *and* the lansoprazole together, this case does not meet that jurisdictional threshold. Plaintiff herself alleges that only $163.03 is in controversy as to the lansoprazole and only $552 is in controversy as to the phospha 250 neutral,

totaling $715.03. (Doc. 75 at 22). This Court therefore lacks subject matter jurisdiction over this Medicare appeal.[3]

Plaintiff's response to the instant Motions to Dismiss largely doubles down on Plaintiff's claims of wide-ranging conspiracy, price-fixing, and fraud. (*See* Doc. 95). But these scattershot assertions of constitutional violations and political schemes do not affect the true nature of this action: an appeal from adverse Medicare coverage determinations. *See Heckler*, 466 U.S. 602. Plaintiff apparently agrees that this action only concerns $717.03 in the aggregate, but argues that the Court should "liberally construe" this amount, "while below the current regulatory threshold," due to Plaintiff's *pro se* status. (Doc. 95 at 19). Plaintiff is correct that *pro se* pleadings are liberally construed, but courts will not "serve as *de facto* counsel or rewrite an otherwise deficient pleading in order to sustain an action." *Lloyd v. Leeper*, 451 F. Supp. 3d 1314, 1322 (M.D. Fla. 2020) (quotations and citations omitted). From the face of the Amended Complaint and its attachments, this action does not meet the statutory threshold, depriving this Court of subject matter jurisdiction. Therefore, this action is due to be dismissed.

## RECOMMENDATION

Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that the Court enter an Order:

---

[3] Because the Court lacks subject matter jurisdiction, the Court need not reach the other issues raised by the instant Motions to Dismiss, such as the proper Defendants to this suit. *See, e.g., Bhd. Ry. Carmen, Div. of Transp. Communications Intern. Union (TCU) v. CSX Transp., Inc.*, 855 F.2d 745, 749 (11th Cir. 1988) ("As we conclude that subject matter jurisdiction is absent, we need not reach the merits.").

1. **GRANTING** the subject Motions to Dismiss, (Docs. 88, 93);

2. **DISMISSING** the Amended Complaint, (Doc. 75), without prejudice for lack of subject matter jurisdiction; and

3. **DENYING** Plaintiff's Motion to Amend, (Doc. 112), as the proposed amended pleading is not materially different to the operative Amended Complaint.

## NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**RECOMMENDED** in Orlando, Florida, on October 7, 2025.

_____
NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

Unrepresented Party

Presiding District Judge